## A03A2287. LOGAN v. THE STATE.
(593 SE2d 14)

MILLER, Judge.

Gerry Logan appeals his conviction for aggravated assault on a peace officer. He contends: (1) the evidence was insufficient; (2) the trial court should have excluded the State's similar transaction evidence; and (3) a tainted jury panel should have been dismissed. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the record shows that sheriff's deputies responded to three domestic calls at the home of Logan and his wife over a three-hour period one evening. In the first call, the wife reported that someone had hit her truck and that she was worried it was Logan trying to scare her. She also told the deputies that she was trying to have him served with divorce papers and that he did not want a divorce. During the second call, the deputies learned from the wife that Logan was in the home eating and that she wanted him served with divorce papers. A deputy asked her to tell Logan to come outside and talk with the deputies. When she asked Logan to come outside, he stood up from the dinner table, raised a pistol, and told his wife that he was not talking to anyone. When the wife told the deputies about Logan's response, they asked her to tell Logan to put the pistol down and come outside. When she returned to the front door where the deputies were waiting, she told them that Logan had left through the back door.

In the third call, the deputies received a report that Logan was pointing a pistol at his wife. Based on Logan's behavior earlier that evening and his similar conduct six months earlier, Sergeant Barfield ordered two deputies to wait by the back door, while he went to the front door to talk with the wife. Six months earlier, Logan grabbed his guns and bulletproof vest and ran out the back door of the trailer when a deputy arrived in response to a domestic dispute dispatch.[1]

When Barfield approached the front door, he heard loud arguing inside the house. The arguing stopped when he knocked on the door.

---

[1] The trial court excluded evidence that shots were fired shortly after Logan ran out the back door because the evidence did not exclude the possibility that another person could have fired the shots.

The wife came to the door and told the sergeant that she was okay. Barfield instructed her to tell Logan to come out and speak with him, and he heard her tell Logan, "Gerry, Sergeant Barfield wants to know if you'll come out and speak with him." When the wife returned and told Barfield that Logan would not come out, he stuck his head in the door and directly asked Logan to come out and talk with him. He then heard Deputy Stewart yell from behind the house, "Freeze! Police! Put the gun down! Put the gun down!"

By the time Barfield arrived in the back of the trailer, Deputy Clark was identifying himself and telling Logan again to drop the gun. Both Deputies Stewart and Clark had their guns drawn on Logan. Logan did not drop the gun. Instead, he pointed his pistol from one deputy to the other while moving toward another trailer in the backyard. Logan continued moving away from the officers with his gun drawn despite instructions from all three of them to drop the gun. When he reached the corner of the second trailer, Logan turned and ran into the woods.

Sergeant Barfield testified that when he came around the back of the trailer, he was scared Logan "was about to shoot one of the deputies." Deputy Stewart, who first encountered Logan in the backyard, testified that he most certainly felt that he was in immediate danger. Deputy Clark testified on direct examination that he feared for his safety when he drew his gun on Logan. During cross-examination, Clark testified that he knew Logan would not shoot the gun because he was moving away from them. On redirect, Clark testified that it was a dangerous situation and that he was prepared to fire his gun when he drew it because he was in great fear for his life.

1. Logan contends insufficient evidence supported his conviction of aggravated assault on a peace officer (Deputy Clark) for two reasons: (1) Deputy Clark did not reasonably apprehend harm; and (2) the State failed to show that he knew or should have known that Deputy Clark was a peace officer. We find the evidence was sufficient to establish both of these elements under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Clark testified that he feared for his life; any conflict in his testimony was a matter of credibility for the jury to resolve. *Robinson v. State*, 246 Ga. App. 576, 577 (1) (541 SE2d 660) (2000). Additionally, other witnesses testified about the dangerous and frightening nature of the standoff between Logan and the deputies. With regard to Logan's knowledge of the deputies' identity, all three officers testified that they identified themselves as peace officers during the standoff and that Logan refused to obey their commands to drop his gun.

2. In his second enumeration of error, Logan contends that the fact that he ran out of the trailer with guns six months earlier should not have been admitted because: (1) it was not criminal conduct; and

(2) there was no logical connection or similarity between the two incidents. We find no error in the trial court's admission of this evidence. It was relevant evidence that Logan "owned or had in his possession weapons with which the crime was or might have been committed prior to . . . the commission of the crime." (Citations and punctuation omitted.) *Palmer v. State*, 271 Ga. 234, 240 (8) (c) (517 SE2d 502) (1999). It also explained the police conduct in stationing officers at the back door. Whether it was criminal conduct is of no import.

3. In his remaining enumeration of error, Logan contends the trial court should have struck the entire jury panel after a potential juror stated in voir dire that he was a neighbor and knew "Gerry Logan's been a problem." The trial court refused to strike the entire panel of sixty jurors because only three jurors were sitting in the audience at the time of the statement. The trial court excused the juror who made the statement, and then questioned the three jurors who were present. When these jurors indicated that they would still be able to honor their oath to render a fair and impartial verdict based on the evidence and the law in the case, the trial court retained them on the panel and denied Logan's motion for a mistrial.

"The conduct of voir dire is within the trial court's sound discretion, which we will not disturb unless that discretion is abused." (Citation omitted.) *Heng v. State*, 251 Ga. App. 274, 279 (4) (554 SE2d 243) (2001).

> Generally, dismissal of a jury panel is required when, during voir dire, a prospective juror relays information that is specific to the defendant and germane to the case for which the defendant is on trial. Dismissal is not required, however, when the statements "establish only gossamer possibilities of prejudice."

(Footnotes omitted.) *Williams v. State*, 248 Ga. App. 111, 112 (1) (545 SE2d 669) (2001).

In *Heng*, supra, a prospective juror stated that the defendant looked like a punk and "comes over here and commits crimes." (Punctuation omitted.) 251 Ga. App. at 278 (4). We held that the trial court did not abuse its discretion by retaining the panel after dismissing the juror for cause, reasoning that, "Although the comments were clearly directed at [the] appellant, they did not necessarily imply guilt of the offense under consideration, they did not link Heng to other crimes, and they were not inherently prejudicial." (Citation and punctuation omitted.) Id. at 279 (4).

Similarly, in *Hughey v. State*, 180 Ga. App. 375, 377-378 (2) (348 SE2d 901) (1986), we found no error in the trial court's failure to dismiss the panel after a prospective juror stated he had previously

arrested the defendant. In so holding, we noted that the comment did not imply guilt. Id. at 378 (2).

Here, the prospective juror's comment, as in *Heng*, supra, and *Hughey*, supra, did not imply that Logan was guilty of the crime with which he was charged. The trial court did not err by denying his request that the entire panel be struck.

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED DECEMBER 11, 2003 —
RECONSIDERATION DENIED JANUARY 12, 2004.

*Virgil L. Brown & Associates, Ronald J. Ellington*, for appellant.
*William T. McBroom III, District Attorney, Gail M. Travillian, Assistant District Attorney*, for appellee.